UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| DANIEL B. KING, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 1:13-cv-01091-TWP-DML |
| CAROLYN W. COLVIN, | ) ) ) |
| Defendant. | ) |

**ENTRY ON JUDICIAL REVIEW**

Plaintiff Daniel B. King ("Mr. King") requests judicial review of the final decision of the Commissioner of the Social Security Administration ("the Commissioner"), denying his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act ("the Act"). For the following reasons, the Court **REMANDS in part** and **AFFIRMS in part** the Commissioner's decision.

## I. BACKGROUND

### A. Procedural History

Mr. King filed his applications for DIB and SSI on July 30, 2010, alleging a disability onset date of July 26, 2010. These claims were initially denied on October 29, 2010, and upon reconsideration on January 4, 2011. Thereafter, Mr. King requested a hearing, which was held on December 12, 2011, before Administrative Law Judge Robert M. Senander ("the ALJ"). Mr. King waived representation by an attorney. On March 7, 2012, the ALJ denied Mr. King's applications for the period between July 26, 2010 and February 17, 2012, but found Mr. King disabled and eligible for SSI benefits as of February 17, 2012. On March 11, 2013, the Appeals Council affirmed the ALJ's decision, thus making it the final decision of the Commissioner for the purposes

of judicial review. 20 C.F.R § 416.1481. On July 8, 2013, Mr. King filed this appeal requesting judicial review pursuant to 42 U.S.C. § 405(g) and 1383(c)(3).

**B.     Medical History**

At the time of his alleged onset date of disability, July 26, 2010, Mr. King was 52 years old with a high school education. He had additional training at a truck driving school and past work history as a general laborer and truck driver. He last worked for Labor Ready cleaning and performing construction work at a pharmaceutical company. Mr. King reached 55 years of age in the summer of 2012, which is considered "advanced age" under 20 C.F.R. § 404.1563(e). The ALJ found that Mr. King was of advanced age as of February 17, 2012.

On August 11, 2010, Mr. King was diagnosed with hypertension, hypertensive heart disease, gastritis, coronary artery disease, and diabetes mellitus. At the request of the Social Security Administration ("the SSA"), Mr. King met with a consulting examiner in October 2010. The examiner, Dr. Kassab, diagnosed insulin-dependent diabetes, diabetic neuropathy, and a plantar wart on the right big toe. He noted that Mr. King had normal range of motion in the spine and all joints, could perform repeated movements with the feet, bend over without restriction, squat normally, could sit and stand, walked with a mild antalgic gait, and could walk on heels and toes with some difficulty.

In October 2010, a non-examining state physician, Dr. Wenzler, reviewed Mr. King's records. He determined that Mr. King could perform a full range of light work because he could stand and/or walk for about six hours per eight-hour work day. In December 2010, Dr. Wenzler's report was affirmed by Dr. Brill upon reconsideration.

A May 4, 2011 medical record from Dr. Sather noted that Mr. King was suffering from foot pain and that MRI results "showed crystal related disease vs. OA, not thought to be infectious.

2

Please assist with eval and treatment or arthrocentesis from R[ight] plantar 1st MTP or L[eft] plantar areas to Dx crystal related disease." (Filing No. 13-8, at ECF p. 21).

On November 18, 2011, Mr. King was treated in the emergency room for a diabetic foot ulcer on his right foot. He was given an x-ray of his right foot, which revealed "advanced degenerative changes of 1st metatarsophalangeal joint and a plantar soft tissue defect with associate subcutaneous emphysema." (Filing No. 13-8, at ECF p. 37). He received a diagnosis of "foot ulcer diabetic ACTIVE." (Filing No. 13-8, at ECF p. 37). He was discharged with instructions to follow up with his physician and was given clindamycin.

On December 2, 2011, Mr. King was admitted to the hospital for diabetic foot ulcers on his right foot. He was given an x-ray of his right foot which indicated "advanced degenerative changes at the first metatarsophalangeal joint," as well as multiple ulcer wounds. (Filing No. 13-8, at ECF p. 39.) On December 3, 2011, Mr. King was given an MRI of his right foot. There were no signs of infection, but the MRI showed "advanced chronic degenerative changes of the first MTP joint." (Filing No. 13-8, at ECF. 41). Mr. King was discharged on December 5, 2011, with instructions for wound care and to follow up with podiatry. At a follow up on December 12, 2011, Mr. King was diagnosed with active foot ulcers and diabetes mellitus. Mr. King reported that his diabetes management and foot ulcers were improving.

### C. The ALJ's Decision

The ALJ made the following findings as part of his decision. At step one, the ALJ found Mr. King met the insured status requirements of the Act through September 30, 2011, and that he had not engaged in substantial gainful activity since the alleged onset date. At step two, the ALJ found that since July 26, 2010, Mr. King has had the following severe impairments: hypertensive heart disease, diabetes, peripheral neuropathy, foot ulcers, and gastritis. At step three, the ALJ

found that Mr. King has not had an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ then found that Mr. King had the residual functional capacity to perform the full range of light work as defined in 20 C.F.R. § 404.1567(b) and 416.967(b). At step four, the ALJ found that Mr. King was unable to perform any past relevant work. The ALJ then found that Mr. King reached advanced age as of February 17, 2012. At step five, the ALJ found that prior to February 17, 2012, there were jobs that existed in significant numbers in the national economy that the Mr. King could perform; however, beginning on February 17, 2012, there were no jobs that existed in significant numbers in the national economy that Mr. King could perform. Therefore, the ALJ found that Mr. King was not disabled prior to February 17, 2012, and was not under a disability within the meaning of the Act at any time through September 30, 2011, the date last insured. The ALJ did find Mr. King disabled as of February 17, 2012.

## II. **DISABILITY STANDARD OF REVIEW**

Under the Act, a claimant is entitled to DIB or SSI if he establishes he has a disability. Disability means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 416(i)(1); 423(d)(1)(A); 1382c(a)(3)(A). The SSA has implemented these statutory standards in part by prescribing a "five-step sequential evaluation process" for determining disability. 20 C.F.R. §§ 404.1520 and 416.924. If disability status can be determined at any step in the sequence, an application will not be reviewed further. *Id.*

At the first step, if the claimant is currently engaged in substantial gainful activity, then he is not disabled. At the second step, if the claimant's impairments are not severe, then he is not

4

disabled. A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § § 404.1520(c) and 416.924(c). Third, if the claimant's impairments, either singly or in combination, meet or equal the criteria for any of the conditions included in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listing of Impairments"), then the claimant is deemed disabled. The Listing of Impairments are medical conditions defined by criteria that the SSA has pre-determined are disabling. 20 C.F.R. § 404.1525. If the claimant's impairments do not satisfy a Listing, then his residual functional capacity ("RFC") will be determined for the purposes of the next two steps. RFC is a claimant's ability to do work on a regular and continuing basis despite his impairment-related physical and mental limitations. 20 C.F.R. §§ 404.1545 and 416.945. At the fourth step, if the claimant has the RFC to perform his past relevant work, then he is not disabled. Fifth, considering the claimant's age, work experience, and education (which are not considered at step four), and his RFC, he will not be determined to be disabled if he can perform any other work in the relevant economy.

A person will be determined to be disabled only if his impairments "are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B). The combined effect of all of a claimant's impairments shall be considered throughout the disability determination process. 42 U.S.C. §§ 423(d)(2)(B) and 1382a(a)(3)(G). The burden of proof is on the claimant for the first four steps; it then shifts to the Commissioner at the fifth step. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992).

The Act, specifically 42 U.S.C. § 405(g), provides for judicial review of the Commissioner's denial of benefits. When the Appeals Council denies review of the ALJ's

findings, the ALJ's findings become the findings of the Commissioner. *See Hendersen v. Apfel*, 179 F.3d 507, 512 (7th Cir. 1999). This Court will sustain the ALJ's findings if they are supported by substantial evidence. 42 U.S.C. § 405(g); *Nelson v. Apfel*, 131 F.3d 1228, 1234 (7th Cir. 1999). In reviewing the ALJ's findings, the Court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the ALJ. *Id.* Although a scintilla of evidence is insufficient to support the ALJ's findings, the only evidence required is "such evidence as a reasonable mind might accept as adequate to support a conclusion." *Diaz v. Chater*, 55 F.3d 300, 305 (7th Cir. 1995) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

The ALJ "need not evaluate in writing every piece of testimony and evidence submitted." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993). However, the "ALJ's decision must be based upon consideration of all the relevant evidence." *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). Further, "[a]n ALJ may not discuss only that evidence that favors his ultimate conclusion, but must articulate, at some minimum level, his analysis of the evidence to allow the [Court] to trace the path of his reasoning." *Diaz*, 55 F.3d at 307. An ALJ's articulation of his analysis "aids [the Court] in [its] review of whether the ALJ's decision was supported by substantial evidence." *Scott v. Heckler*, 768 F.2d 172, 179 (7th Cir. 1985).

The ALJ's findings of fact, if supported by substantial evidence, are conclusive; however, "[i]n coming to his decision . . . the ALJ must confront evidence that does not support his conclusion and explain why it was rejected." *Kasarsky v. Barnhart*, 335 F.3d 539, 543 (7th Cir. 2003). The ALJ's decision must also demonstrate the path of reasoning, and the evidence must lead logically to his conclusion. *Rohan v. Chater*, 98 F.3d 966, 971 (7th Cir. 1996). While the ALJ need not discuss every piece of evidence in the record, he must provide at least a glimpse into his reasoning through an adequate discussion, otherwise it will be remanded. *See Briscoe ex rel.*

*Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005); *Zurawski v. Halter*, 245 F.3d 881, 888–89 (7th Cir. 2001).

## III. DISCUSSION

Mr. King raises three issues for the Court's review: (1) is the ALJ's decision that Mr. King could perform the full range of light work supported by substantial evidence; (2) did the ALJ account for arthritis in Mr. King's right big toe joint; and (3) did the ALJ account for Mr. King's severe foot ulcers when determining his RFC. Mr. King also raises whether he properly waived representation in a footnote and, as a result, whether the burden to develop the record falls upon the ALJ. *See Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007) ("The ALJ's failure to obtain a valid waiver of counsel heightens his duty to develop the record."). "An SSI applicant's right to be represented by counsel at a disability hearing is statutory." *Id*. An ALJ must explain three concepts to *pro se* claimants in order to secure a valid waiver of this right: "(1) the manner in which an attorney can aid in the proceedings, (2) the possibility of free counsel or a contingency arrangement, and (3) the limitation on attorney fees to 25 percent of past due benefits and required court approval of the fees." *Id.* (internal quotation omitted). Mr. King specifically alleges that the ALJ did not explain the manner in which a representative could assist him.

The Commissioner argues that the ALJ sufficiently secured a waiver of Mr. King's right to representation. However, the hearing transcript reveals that the ALJ did not explain to Mr. King "the *manner* in which an attorney *can aid in* the proceedings." *Id.* (emphasis added). The ALJ only explained the availability of free counsel or contingency arrangements and the limitation on fees. See Filing No. 13-2, at ECF p. 29. Therefore, the Court agrees with Mr. King that the ALJ did not secure a valid waiver and was thus required to "scrupulously and conscientiously probe

into, inquire of, and explore for all relevant facts." *Skinner*, 478 F.3d at 841–42. With this in mind, the Court turns to the issues.

The ALJ found that Mr. King had the RFC to do the full range of light work prior to February 17, 2012. Specifically, the ALJ found that Mr. King suffered from diabetic neuropathy, gastric hypertension, high cholesterol, nerve damage in the feet, and a mild heart attack. Further, the ALJ found that some of Mr. King's alleged symptoms—including throbbing pain, difficulty standing, inability to put pressure on his feet, diabetic ulcers, and passing out when standing—could reasonably be caused by Mr. King's impairments. However, the ALJ found that the consulting medical examiners' opinions, who reviewed Mr. King's records in 2010 and found that Mr. King could perform light work, were consistent with the medical records and Mr. King's own testimony that he could stand for 6 hours in a work day.

Mr. King argues that the ALJ improperly put too much weight on Mr. King's testimony that he could stand for a 6 hour work day, because Mr. King also stated that he could not do so for an entire work week. See Filing No. 13-2, at ECF p. 43–44. The following exchange took place:

> Q: What if you had a job where you only had to work six hours and not 10?
>
> A: It would be painful, but I probably can do it for six hours.
>
> Q: Every day of the w[eek].
>
> A: Not every day.
>
> Q: Why not?
>
> A: Because the pain just builds up. The more I stand on it, the more painful it is.

Filing No. 13-2, at ECF p. 43–44. Mr. King argues that his testimony does not indicate he could perform full-time light work, as required by the ALJ's RFC determination. The Court finds that the ALJ was entitled to rely upon Mr. King's testimony when determining the RFC, but that the

8

ALJ's finding is problematic. First, Mr. King did testify that he could not work a full work week of 6 hours per day of standing. Second, the medical opinions upon which the ALJ relied, see [Filing No. 13-2, at ECF p. 20](), came from October and December of 2010, a full year before Mr. King was admitted to the hospital for foot ulcers and testified at the hearing.

Mr. King also argues that the ALJ did not account for his foot ulcers when crafting the RFC. Mr. King testified that he had been dealing with foot pain, calluses, and ulcers since early 2011. Medical records beginning on January 19, 2011, show complaints of foot pain, recommendations to see podiatry, and diagnoses of crystal disease, diabetic neuropathy, and extensive plantar callous. See [Filing No. 13-8, at ECF p. 24](); [Filing No. 13-8, at ECF p. 21]()–22; [Filing No. 13-2, at ECF p. 11]()–12; [Filing No. 13-8, at ECF p. 6](). Additionally, Mr. King testified that he could not go to his podiatrist appointments because he could not afford the co-pay. [Filing No. 13-2, at ECF p. 44](). Then, in November and December 2011, Mr. King presented to the emergency room with foot ulcers, which resulted in a three-day hospitalization in December 2011. The ALJ noted that, "[i]n spite of these findings and hospital treatment, however, the claimant testified that he could stand on his feet for 6 hours during a workday, albeit with some pain." [Filing No. 13-2, at ECF p. 20](). The ALJ then went on to give the consulting medical expert opinions "significant weight." However, these opinions did not take into consideration the foot pain and problems suffered by Mr. King in 2011, because the opinions were given in 2010.

The Seventh Circuit has repeatedly criticized generalized statements that a:

> claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms and limitations, however, the claimant's statements concerning the intensity, persistence and limiting effects of his symptoms are not credible, because the allegations are unsupported and even contradicted by the medical evidence of record, as will be discussed below.

[Filing No. 13-2, at ECF p. 18](); *Bjornson v. Astrue*, 671 F.3d 640, 645 (7th Cir. 2012).

In the Court's view, the ALJ failed to scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts when it relied upon 2010 medical opinions that did not take into consideration Mr. King's 2011 pain and treatments. The generalized conclusion quoted above lacks merit when Mr. King's 2011 medical records support his reports of foot pain and inability to stand for 6 hour days for an entire work week. Therefore, the Court finds that remand is appropriate to fully develop the record and determine if Mr. King had the RFC to complete the full range of light work given his 2011 medical treatment and reports of pain prior to February 17, 2012. The Court notes that Mr. King's argument that the ALJ ignored his right big toe arthritis is not a basis for remand. In the numerous medical records from 2011, including those interpreting Mr. King's x-rays and MRI results, none of the medical professionals diagnosed or recommended treatment for arthritis. The ALJ did not err in not considering it a severe impairment upon this record.

## IV. **CONCLUSION**

Accordingly, the final decision of the Commissioner of the Social Security Administration is **REMANDED in part** for further proceedings, not inconsistent with this Order. The Commissioner's decision that Mr. King is disabled as of February 17, 2012 is **AFFIRMED**.

**SO ORDERED.**

Date: 9/17/2014

_____
Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

J. Frank Hanley, II
jfrankhanley@jfrankhanley.com

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov